UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| LAURA KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-cv-00144-MLB |
| | ) | |
| HLTC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT**
_____

Defendant HLTC, Inc. ("HLTC") by and through its counsel, Christopher P. Brown and Savannah B. Moore, pursuant to Fed. R. Civ. P. 12, submits the following answer and affirmative defenses to Plaintiff's Amended Complaint [ECF 14], and demands a jury trial on all issues so triable.

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1367.

**RESPONSE: The statements in paragraph 1 are legal conclusions, not factual averments. As such, no response is required. To the extent a response is required, HLTC states that it does not challenge subject matter jurisdiction.**

1

2.     Defendant is a George [sic] nonprofit corporation with its principal office in Dalton, Georgia. Its registered agent for service of process is Savannah B. Moore, 1200 Memorial Drive, Dalton, Georgia, 30720.

**RESPONSE: Admitted.**

3.     Defendant owns and operates an assisted living and rehabilitation facility on Broadrick Drive in Dalton, Georgia called Regency Park Health and Rehabilitation (Regency Park). Defendant also owns and operates facilities in other states.

**RESPONSE: HLTC admits that it owns and operates a skilled nursing facility d/b/a Regency Park Health and Rehabilitation located on Broadrick Drive in Dalton, Georgia. HLTC denies the remaining allegations in paragraph 3.**

4.     Plaintiff was employed by Defendant at Regency Park from approximately June of 2019 through May of 2020.

**RESPONSE: HLTC admits that Plaintiff was employed by HLTC from June 3, 2019 to May 24, 2020.**

5.     Plaintiff was employed by Defendant as a cook and kitchen supervisor. Her duties included cooking/preparing meals and serving them to the residents at Defendant's facility.

**RESPONSE: HLTC admits that Plaintiff was employed by HLTC as a cook and that her job duties included, but were not limited to, cooking/preparing meals. HLTC denies that Plaintiff was employed as a kitchen supervisor.**

6. Defendant agreed to pay Plaintiff $12.00 an hour for her work.

**RESPONSE: HLTC admits that Plaintiff's hourly rate was $12.00.**

7. Plaintiff clocked in and out on a time recording device.

**RESPONSE: HLTC admits that Associates, such as Plaintiff, log their working time using an electronic recording device. HLTC admits that Plaintiff clocked in and out on a time recording device some of the time. HLTC denies that Plaintiff clocked in and out on a time recording device all of the time. Any remaining allegations in paragraph 7 are denied.**

8. While she was employed by Defendant, Plaintiff routinely worked uncompensated hours for which she was not compensated, including regular hours and overtime hours of more than 40 during a workweek.

**RESPONSE: Denied.**

9. More specifically, Defendant automatically subtracted a 30-minute lunch break each day from Plaintiff's recorded work time, for which it did not compensate Plaintiff, even though Plaintiff rarely took a lunch break and did not receive uninterrupted, 30-minute lunch breaks.

**RESPONSE: HLTC admits that it has a written automatic mealtime deduction policy that reads as follows:**

> **Meal periods are non-paid time. Associates do have the autonomy to leave the campus during their meal breaks; however, if an Associate desires to eat their meal on campus during their**

> **designated meal break, they must do so in departmental or facility designated break areas. Associates leaving the premises are required to clock out and clock in. Associates eating on campus are not required to clock out; however, 30 minutes will automatically be deducted for a meal period. If an Associate is scheduled by the supervisor to work their meal period or if your meal period is interrupted for work-related reasons, the Associate should notify their supervisor and the 30 minute meal period will be included in paid hours.**

**HLTC denies the remaining allegations in paragraph 9.**

10. During Plaintiff's scheduled lunch break times, Plaintiff routinely received calls from nursing assistants at the facility concerning food requests of residents of the facility. For example, a resident may not have received his/her meal, or may have requested more food. Plaintiff had to respond to these requests by bringing food to the residents.

**RESPONSE: HLTC admits that residents sometimes request additional food during the resident's meal time ("call back"). HLTC affirmatively avers that call backs generally take less than three minutes to complete and are primarily performed by Plaintiff's Supervisor. HLTC denies that Plaintiff routinely performed call backs.**

11. Plaintiff's direct supervisor, who was head of the dietary department, worked in an office that was in the kitchen where Plaintiff worked. The supervisor had a large window in his office from which he could look out into the kitchen, and he

routinely interacted with and supervised Plaintiff and the other two or three employees who worked in the kitchen.

**RESPONSE: HLTC admits that, as a supervisor, Plaintiff's supervisor interacted and supervised Plaintiff and the other kitchen staff. HLTC admits that Plaintiff's direct supervisor had an office in the kitchen with a small window. HLTC affirmatively avers that the blinds on the window remained closed at all times relevant to this dispute. Any remaining allegations of paragraph 11 are denied.**

12. Plaintiff's supervisor was well aware that Plaintiff was working through her lunch breaks and was not being compensated for this work time.

**RESPONSE: Denied. HLTC affirmatively avers that Plaintiff's direct supervisor was aware of the following: Plaintiff left the building for her lunch break and usually took 45-minute lunch breaks.**

13. In fact, Plaintiff and others who worked in the kitchen constantly complained to the supervisor about not being able to take lunch breaks. Plaintiff's supervisor responded to Plaintiff by telling her that "you have to make sure that the residents are taken care of," or words to that effect.

**RESPONSE: HLTC admits that, as skilled nursing facility, its primary function is to care for residents. HLTC denies the remaining allegations in paragraph 13 either affirmatively or for lack of information.**

14. Plaintiff's supervisor was also well aware that Plaintiff was not being compensated for the time she spent working during her lunch breaks. The supervisor reviewed and approved Plaintiff's time records before payments were issued, and he knew that lunch breaks were being automatically deducted from Plaintiff's time records. On more than one occasion, the supervisor called Plaintiff into his office to question her about certain clock times on her time records. Plaintiff also made requests for paid time off, or "PTO", directly to her supervisor.

**RESPONSE: HLTC admits that Plaintiff's supervisor reviewed and approved Plaintiff's time records; that Plaintiff's supervisor knew about the automatic meal time deduction policy; that Plaintiff's supervisor questioned Plaintiff about missed "punches" on the time clock to ensure that her time records were accurate; and that Plaintiff requested, and received, paid time off. HLTC denies the remaining allegations in paragraph 14.**

15. Despite his knowledge that Plaintiff was working through and not receiving her lunch breaks, at no time did Plaintiff's supervisor ever revise Plaintiff's time records to restore the time that was automatically deducted for lunch breaks, or otherwise take steps to ensure that Plaintiff was paid for this off-the-clock work.

**RESPONSE: Denied.**

> **RESPONSE TO "Count 1 – Violation of Fair Labor Standards Act"**

16. Pursuant to Fed. R. Civ. P. 10(c), Plaintiffs adopt by reference the allegations set forth in paragraphs 1-9 [sic] above.

**RESPONSE: Defendant incorporates by this reference its responses to paragraphs 1-15.**

17. Defendant was an "employer" of Plaintiff as defined by Section 203(d) of the FLSA.

**RESPONSE: The statements in paragraph 17 are legal conclusions, not factual averments. As such, no response is required. To the extent a response is required, HLTC denies the allegations in paragraph 17 for lack of information.**

18. Plaintiff was an "employee" of Defendant as defined by Section 203(e)(1) of the FLSA.

**RESPONSE: The statements in paragraph 18 are legal conclusions, not factual averments. As such, no response is required. To the extent a response is required, HLTC denies the allegations in paragraph 18 for lack of information.**

19. Defendant was an enterprise engaged in commerce or in the production of goods for commerce as defined by Section 203(s)(1) of the FLSA. Defendant had annual gross volume of sales which exceeded $500,000.00.

**RESPONSE: HLTC admits that it has annual gross volume of sales which exceed $500,000.00. The remaining statements in paragraph 19 are legal conclusions, not factual averments. As such, no response is required. To the**

extent a response is required, HLTC denies the allegations in paragraph 19 for lack of information.

20. The minimum wage and overtime provisions of the FLSA set forth in Sections 206 and 207, respectively, apply to Defendant.

**RESPONSE: The statements in paragraph 20 are legal conclusions, not factual averments. As such, no response is required. To the extent a response is required, HLTC denies the allegations in paragraph 20 for lack of information.**

21. While she was employed by Defendant, Plaintiff was entitled to overtime wages at a rate of one and one-half times his [sic] regular rate of pay for all hours worked over 40 in a given workweek.

**RESPONSE: The statements in paragraph 21 are legal conclusions, not factual averments. As such, no response is required. To the extent a response is required, HLTC denies the allegations in paragraph 21 for lack of information.**

22. Defendant's failure to pay Plaintiff overtime wages of one and one-half times her regular rate of pay for all overtime hours was a violation of Section 207(a)(1) of the FLSA.

**RESPONSE: Denied.**

23. As a result of Defendant's violation of Section 207 of the FLSA, Defendant is liable to Plaintiff for overtime back pay.

**RESPONSE: Denied.**

24. In addition to the amount of unpaid overtime wages owing to Plaintiff, Plaintiff is also entitled to recover an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b).

**RESPONSE: Denied.**

25. Plaintiff is entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**RESPONSE: Denied.**

26. Defendant's violation of Section 207 of the FLSA was willful. Specifically, Defendant was well aware of its obligation to pay Plaintiff overtime wages pursuant to the FLSA, or recklessly disregarded its legal obligation.

**RESPONSE: Denied.**

      **RESPONSE TO "Count 2 – Breach of Contract Under State Law"**

27. Pursuant to Fed. R. Civ. P. 10(c), Plaintiff adopts by reference the allegations set forth in paragraphs 1-20 [sic] above.

**RESPONSE: Defendant incorporates by this reference its responses to paragraphs 1-26.**

28. Defendant's agreement to pay Plaintiff $12.00 an hour for her work is an enforceable contract under applicable state law.

**RESPONSE: HLTC admits that Plaintiff's rate of pay was $12.00 per hour. The remaining statements in paragraph 28 are legal conclusions, not factual**

**averments. As such, no response is required. To the extent a response is required, HLTC denies the remaining allegations in paragraph 28 for lack of information.**

29. By failing to compensate Plaintiff for all of the hours she worked, Defendant breached its contract with Plaintiff.

**RESPONSE: Denied.**

30. Plaintiff sustained damages as a result of Defendant's breach of contract. Specifically, Plaintiff failed to receive wages for work she performed for Defendant at the agreed-upon rate of pay.

**RESPONSE: Denied.**

31. During weeks in which Plaintiff was not compensated for all of her regular, non-overtime work hours, Plaintiff seeks recovery for those uncompensated regular hours at the agreed-upon hourly rate based on Defendant's breach of contract.

**RESPONSE: Denied.**

### RESPONSE TO "Prayer for Relief"

32. **Defendant denies Plaintiff's Prayer for Relief, including subparagraphs (a)-(f).**

33. **Defendant denies any and all averments in the Amended Complaint not expressly admitted herein.**

## AFFIRMATIVE DEFENSES

HLTC alleges the following affirmative defenses to Plaintiff's claims. HLTC reserves the right to add or withdraw affirmative defenses based on discovery.

### FIRST AFFIRMATIVE DEFENSE

Counts 1 and 2 fail because Plaintiff did not work the hours claimed.

### SECOND AFFIRMATIVE DEFENSE

Count 1 fails because HLTC had no actual or constructive knowledge that Plaintiff worked through her meal time. *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995); *see also Macleroy v. City of Childersburg*, No. 1:18-CV-395-CLM, 2020 WL 1812298, at *5 (N.D. Ala. Apr. 9, 2020); and *Debose v. Broward Health*, No. 08-61411-CIV-MOORE, 2009 WL 4884535 (S.D. Fla. Dec. 17, 2009).

### THIRD AFFIRMATIVE DEFENSE

Count 1 fails because any alleged interruptions during meal breaks were *de minimis*, and, therefore, not compensable work. *Bridges v. Amoco Polymers, Inc.*, 19 F.Supp.2d 1375 (S.D. Ga. 1997)

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim for liquidated damages in Count 1 fails because HLTC's actions were taken in "good faith" and with reasonable ground for believing that it did not violate Georgia or federal law. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).

## FIFTH AFFIRMATIVE DEFENSE

Counts 1 and 2 fail because HLTC reasonably implemented and communicated time-keeping procedures, including the need to report interrupted meal breaks, to Plaintiff. Plaintiff failed to follow HLTC's automatic meal time deduction policy.

## SIXTH AFFIRMATIVE DEFENSE

Counts 1 and 2 fail because Plaintiff spent at least thirty (30) uninterrupted minutes outside the facility during her meal breaks.

## SEVENTH AFFIRMATIVE DEFENSE

Counts 1 and 2 fail because Plaintiff has not sufficiently identified the specific dates that she allegedly worked without compensation. *Gilson v. Indaglo*, 581 Fed. Appx. 832 (11th Cir. 2014).

## EIGHTH AFFIRMATIVE DEFENSE

Count 2 fails because following HLTC's meal time deduction policy was a prerequisite to being paid for work during meal time.

## NINTH AFFIRMATIVE DEFENSE

Count 2 fails under the doctrines of waiver, laches, estoppel, ratification, acquiescence, or unclean hands because Plaintiff failed and/or refused to follow HLTC's meal time deduction policy.

## TENTH AFFIRMATIVE DEFENSE

Count 2 fails, in whole or in part, based on Plaintiff's failure to mitigate her claimed damages by failing to notify HLTC of the dates and times that she allegedly worked through lunch.

**HLTC DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Dated:     September 3, 2020.

*s/Christopher P. Brown*
_____
Christopher P. Brown, GA Bar #795154
Savannah B. Moore, GA Bar #796474
HAMILTON HEALTH CARE SYSTEM, INC.
1200 Memorial Dr.
Dalton, GA 30720
T: 706.272.6428
F: 706.272.6110
Emails:     cpbrown@hhcs.org
            sbmoore@hhcs.org
**Attorneys for Defendant HLTC, Inc.**

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on September 3, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and notification of such filing was also electronically served to the following email addresses:

R. Scott Jackson, rsjackson@rsjacksonlaw.com
4525 Harding Rd., Suite 200
Nashville, TN 37205
*Attorney for Plaintiff*

John McCown, john.mccown@warrenandgriffin.com
WARREN & GRIFFIN, P.C.
300 West Emery Street, Suite 108
Dalton, GA 30720
*Attorney for Plaintiff*

                                                *s/Christopher P. Brown*
                                                _____
                                                Christopher P. Brown